Filed 7/1/25  Alexander v. Scripps Memorial Hospital La Jolla CA4/1

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER M. ALEXANDER,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SCRIPPS MEMORIAL HOSPITAL LA JOLLA,<br><br>Defendant and Respondent. | D082380<br><br><br><br>(Super. Ct. No.<br>37-2014-00016257-CU-MM-CTL) |

APPEAL from a judgment and postjudgment orders of the Superior Court of San Diego County, Keri G. Katz, Judge.  Motion for appellate sanctions denied.  Affirmed.

Christopher M. Alexander, in pro. per., for Plaintiff and Appellant.

Higgs Fletcher & Mack, John Morris, William A. Low and Steven M. Brunolli for Defendant and Respondent.

In postjudgment discovery proceedings in 2020 to collect on a civil money judgment, the trial court ordered plaintiff and appellant Christopher M. Alexander, a self-represented attorney, to produce various financial documents to the judgment creditor defendant Scripps Memorial Hospital La Jolla (Scripps).[1]  A month later, Alexander filed a motion for a protective order.  After the court granted his motion, but only in part, Alexander filed a motion for reconsideration.  Several years later, finding Alexander's reconsideration motion legally frivolous and objectively unreasonable, the court ordered him to pay Scripps $5,472 in Code of Civil Procedure section 128.7[2] sanctions.

Alexander appeals from the "final judgment in this matter and all orders that are separately appealable," including the sanctions order.  He contends the trial court abused its discretion in awarding sanctions; he also seeks to challenge the court's earlier orders granting Scripps's motion to compel production of his records and denying in part his motion for a protective order.  Scripps responds that Alexander's appeal is timely only with respect to the sanctions order.  It also requests appellate sanctions, arguing that Alexander's appeal is substantively frivolous and taken solely to cause delay.

We agree with Scripps that we are limited on appeal to considering Alexander's challenge to the trial court's order granting section 128.7 sanctions.  We affirm that order, but we deny Scripps's motion for sanctions on appeal.

---

[1]     Defendant and respondent is Scripps Health doing business as Scripps Memorial Hospital La Jolla.

[2]     Undesigned statutory references are to the Code of Civil Procedure.

## FACTUAL AND PROCEDURAL BACKGROUND

Alexander filed suit against Scripps arising out of his mother's medical care. (*Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, 213 (*Alexander*).)[3] In 2017, Scripps obtained summary judgment in its favor, leading to entry of an amended judgment in the sum of $43,302.51, reflecting its costs of suit. We affirmed the judgment on appeal but remanded to the trial court to determine expert fees. (*Id.* at pp. 214, 243.)

Scripps then embarked on postjudgment discovery to collect on the judgment, which included serving interrogatories (§ 708.020) as well as an inspection demand (§ 708.030) for Alexander's investment and account information, employment income, and tax returns for 2016, 2017, and 2018. Alexander responded with identical objections to each of the 24 interrogatories and 30 document requests.[4] Scripps moved to compel Alexander's further responses to those requests, which the trial court (Judge Randa Trapp) granted in August 2020, ruling that Scripps was "entitled to code compliant substantive responses" and directing Alexander to provide verified supplemental responses by the end of September 2020. Alexander

---

[3]    Our prior opinion set out the detailed underlying facts, so we need not repeat them here.

[4]    Alexander responded to each of the interrogatories and inspection demands as follows: "Objection. This request is vague, ambiguous, overbroad, and unduly burdensome. Additionally, plaintiff has only recently begun investigating the information requested. In further objecting, this request seeks information protected from disclosure by the right to privacy under Article 1, Section 1, of the California Constitution." Days before the hearing on Scripps's motion to compel, he served supplemental responses, but Alexander has included in the record only the first page and verification page of those responses.

sought to challenge that ruling by filing a petition for writ of mandate in this court, which we summarily denied on September 30.

Days before the September deadline for Alexander to comply, he moved for a protective order relating to his responses and production. Acknowledging that Scripps's counsel had agreed to meet and confer about such an order during the hearing on Scripps's motion to compel and attaching the reporter's transcript of the August 2020 hearing, Alexander stated the parties had not agreed on its terms, and asked the court to review in camera the requested information to "conclusively find that it is privileged and private." He also requested costs for filing the motion ($191). In November 2020, Scripps filed a limited opposition, explaining it had provided a proposed protective order to Alexander and revised it in response to his complaints. Despite those efforts, Alexander had not yet responded to the discovery.[5]

Although finding that Alexander had not promptly sought a protective order, a different superior court judge (Judge Carolyn Caietti) granted his request for such an order "in part." The court's November 2020 order modified Scripps's proposed protective order and made it operative; it further ordered Alexander to provide code compliant verified discovery responses by December 4, 2020.

_____

[5]     The court set a September 30, 2020 deadline for Alexander's further responses. In its limited opposition to Alexander's request for a protective order, Scripps's counsel explained that Scripps had provided a proposed protective order on August 10, 2020, in anticipation of an informal discovery conference with the court; that on September 22, 2020, it received Alexander's "grievances" with the proposed order; and two days later Scripps mailed a revised order. Alexander filed his motion for a protective order on September 28, 2020. Because Alexander assertedly refused to submit to electronic service, Scripps mailed its correspondence to him, which is likely why Alexander stated in his protective order motion that he had not heard back from Scripps about his objections by the time he filed his motion.

On December 4, however, Alexander moved for reconsideration of the court's protective order ruling, asserting that his financial and tax records were privileged and private. He argued "that new and different facts, law, and circumstances exist in the form of the court's August 20, 2020 transcript." In his view, the transcript reflected the court's "implicit[] finding without any dispute that the discovery is privileged and private . . . ." A few days later, Alexander filed a peremptory challenge to Judge Caietti. In the midst of the pandemic, the case was not reassigned until October 2021.

Within days of the reassignment to Judge Keri G. Katz, Scripps moved for an order striking Alexander's reconsideration motion and an award of $5,472 in section 128.7 sanctions on grounds that the motion was filed by Alexander primarily for the improper purpose of avoiding his discovery obligations. (§ 128.7, subd. (b)(1).) Scripps also asserted that Alexander made contentions unwarranted by existing law (*id.*, subd. (b)(2)) and/or without evidentiary support (*id.*, subd. (b)(3)). Alexander opposed the motion, arguing that Scripps's request for sanctions was misleading and that Scripps should be sanctioned due to its "history of abuse." He maintained his reconsideration motion was based on the trial court's and Scripps's counsel's characterization of the records during the August 2020 hearing, as well as binding case law holding that such records should be protected. Alexander asserted that Scripps had refused his requests to designate his financial records and tax returns privileged and private, forcing him to file his protective order motion. He stated that in granting the protective order, Judge Caietti also refused to include language reflecting that the requested information was privileged and private. He claimed the transcript showed that Judge Trapp had referred to the requested records as

5

privileged and private, and the "undisputed characterization of the records should have been applied to the protective order."

In February 2022, Judge Katz denied Alexander's reconsideration motion. She rejected Alexander's argument that he had presented new or different facts, circumstances and law, pointing out he had submitted the August 2020 transcript with his protective order motion that Judge Caietti ruled on in November 2020. Thus, the court found that Alexander had not met his burden on the motion.

It was not until April 2023 that the court finally ruled on Scripps's request for sanctions based on Alexander's allegedly improper reconsideration motion. Judge Katz found that "[a]bsent a showing of 'new or different facts, circumstances, or law' the court finds Alexander's motion for reconsideration was legally frivolous (i.e., 'not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law')." She further determined that "any reasonable attorney would agree that Alexander's motion for reconsideration was totally and completely without merit and that Alexander's conduct in filing the motion was objectively unreasonable." "Such circumstances," in her view, "warrant[ed] the imposition of sanctions under [section] [128.7, subdivision] (b)(2)." The court found $5,472 in sanctions to be reasonable, and ordered Alexander to pay that sum within 10 days of the ruling.

## DISCUSSION

### A.    *The Limited Scope of Alexander's Appeal*

On June 16, 2023, Alexander filed the notice of appeal in this case. In it he claimed to appeal "the final judgment in this matter and all orders that are separately appealable . . . ." The notice listed the orders as "including, but not limited to" the court's April 2023 order granting Scripps

6

$5,472 in sanctions as well as the August 2020 order compelling further discovery from Alexander, the November 2020 order granting in part Alexander's request for a protective order, and the February 2022 order denying Alexander's motion for reconsideration.

Scripps does not contest Alexander's right to appeal the April 2023 sanctions order, which is specifically made appealable by statute. (§ 904.1, subd. (a)(12) [permitting appeals "[f]rom an order directing payment of monetary sanctions by a party or an attorney for a party if the amount exceeds five thousand dollars ($5,000)"].) Moreover, part of the basis for the sanctions order was the court's denial of Alexander's motion for reconsideration. Another statutory provision, section 906, provides that when considering an appeal pursuant to section 904.1, we "may review . . . any intermediate ruling, proceeding, order or decision which . . . necessarily affects the judgment or order appealed from or which substantially affects the rights of a party . . . ." (§ 906.) Because the premise for the sanctions order was that Alexander's reconsideration motion was legally frivolous, the decision on that earlier motion was an "intermediate ruling" that "necessarily affect[ed]" the monetary sanction, and to that extent is reviewable on appeal from the sanctions order. (*Ibid.*)[6]

For purposes of limiting the scope of the appeal, Scripps focuses on the August 2020 order granting the motion to compel further discovery responses from Alexander and the November 2020 order denying in part Alexander's request for a protective order. Scripps contends we lack jurisdiction to consider any of Alexander's challenges to these prior orders because his attempt to appeal them is untimely.

---

[6] The denial of the motion for reconsideration is not itself an appealable order. (*Young v. Tri-City Healthcare Dist.* (2012) 210 Cal.App.4th 35, 51.)

7

Because "[t]he existence of an appealable judgment [or order] is a jurisdictional prerequisite to an appeal" (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126; see also *Finance Holding Co. LLC v. The American Institute of Certified Tax Coaches, Inc.* (2018) 29 Cal.App.5th 663, 673 (*Finance Holding*); *In re Marriage of Tim & Wong* (2019) 32 Cal.App.5th 1049, 1052 (*Tim & Wong*)), we must address at the outset the proper scope of this appeal. As a general principle, to properly invoke this court's appellate jurisdiction, an appellant must identify an appealable judgment or order and demonstrate that the notice of appeal from that judgment or order was timely filed. " ' "[T]he right of appeal is statutory and . . . a judgment or order is not appealable unless expressly made so by statute." ' " (*Teal v. Superior Court* (2014) 60 Cal.4th 595, 598.)

Here, Alexander's notice of appeal indicates he is appealing from the "final judgment" *and* from separately appealable orders. The reference to the final judgment in this case, entered in July 2016, is confusing because Alexander long ago appealed from that judgment and our decision in that matter has been final for many years. (See *Alexander*, *supra*, 23 Cal.App.5th 206.) The 2016 judgment does not provide us with jurisdiction to hear *this* appeal.

Apart from a final judgment, section 904.1 identifies certain orders that are appealable. Among them, subdivision (a)(2) of the statute permits an appeal from an "order made after" an appealable final judgment. As the Supreme Court has made clear, however, despite the "inclusive language" of the statute "not every postjudgment order that follows a final appealable judgment is appealable." (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651.) In particular, "a postjudgment order that does 'not affect the judgment or relate to its enforcement [is] not appealable.' " (*Id.* at p. 652,

8

quoting *Olson v. Cory* (1983) 35 Cal.3d 390, 400.) As *Lakin* explains, to be appealable the postjudgment order (1) must "determine[] the rights and liabilities of the parties arising from the judgment," and (2) cannot be "preliminary to later proceedings" such that it will "become subject to appeal after some future judgment." (*Lakin,* at p. 656.)

Scripps maintains that the trial court's 2020 postjudgment discovery orders—granting Scripps's motion to compel in August and denying in part Alexander's motion for a protective order in November—were immediately appealable. In its view, having failed to properly challenge those orders at the time they were made, Alexander cannot wait until years later when he is appealing an entirely different separately appealable order—the April 2023 decision granting Scripps's motion for section 128.7 sanctions—to amalgamate all his complaints about earlier orders. For his part, Alexander argues only that postjudgment discovery orders directed at *parties* should not be immediately appealable under section 904.1, subdivision (a)(2). He seems to assume that if a postjudgment order is not immediately appealable when made, it must be appealable at some later point. He never articulates why the 2020 postjudgment discovery orders in this case became appealable after the granting of a sanctions motion three years later.

There is no question that the 2020 postjudgment discovery orders Alexander seeks to appeal here addressed the rights and responsibilities of the parties to the judgment within the meaning of *Lakin*'s first requirement. As to the second *Lakin* requirement, none of the orders expressly contemplated additional proceedings and further court orders. And caselaw since *Lakin* is at best unclear when the mere *possibility* of related "later proceedings" is sufficient to preclude the immediate appeal of a postjudgment order, and particularly postjudgment discovery orders. (*Tim & Wong, supra,*

9

32 Cal.App.5th at p. 1054 ["the appealability of postjudgment discovery orders is a difficult question"].)

The inconsistency in the caselaw is perhaps best exemplified by two decisions by this court filed within days of each other. (See *Macaluso v. Superior Court* (2013) 219 Cal.App.4th 1042; *Fox Johns Lazar Pekin & Wexler, APC v. Superior Court* (2013) 219 Cal.App.4th 1210, 1223.) Both involved the attempted appeal of postjudgment discovery orders directed at third parties, and neither order expressly contemplated further proceedings or additional court orders. *Macaluso* held that the discovery order was appealable because it ordered the production of documents and "left no issue for future consideration except the subpoenaed party's compliance or noncompliance with the terms of the order." (*Macaluso*, at p. 1049.) *Fox Johns* noted the recent *Macaluso* decision and acknowledged it was "not clear if the superior court will be issuing further orders regarding the very discovery at issue," but nonetheless concluded that the "better approach" was to treat the appeal as a petition for writ of mandate. (*Fox Johns*, at p. 1218, fn. 4.) To the extent *Fox Johns* can be read to distinguish *Macaluso*, the court in *Yolanda's* commented that "[any] distinction escapes us." (*Yolanda's, Inc. v. Kahl & Goveia Commercial Real Estate* (2017) 11 Cal.App.5th 509, 513 (*Yolanda's*).)

Several cases decided since *Fox Johns* and *Macaluso* favor significantly restricting the appeal of these postjudgment orders on the theory that allowing immediate appeal "will invite unnecessary delay and facilitate the concealment of assets." (See, e.g., *Yolanda's, supra*, 11 Cal.App.5th at p. 513.) Some of these seem to imply that immediate appeal is unnecessary because appellate recourse will be afforded at a later date. (See *Tim & Wong, supra*, 32 Cal.App.5th at p. 1055 ["There is no need to allow an *immediate*

10

appeal of these orders . . . to ensure appellant's ultimate right to appeal these orders"].) But they do not explain how the opportunity for appellate review will be provided if the "mere possibility" of a subsequent appealable court order on a related topic does not materialize.

In a more recent case, *Finance Holding, supra*, 29 Cal.App.5th 663, this court suggested that balancing the costs of delay against the need for appellate review is a policy judgment better left for the Legislature to resolve. We highlighted that the most difficult question is whether a postjudgment discovery order should be treated as not appealable based on the mere possibility that "other proceedings *might* take place." (*Id.* at p. 677.) Although we acknowledged that refusing to recognize a right to appeal such orders might be more efficient, we expressed concern that it could also "forever eliminate" the losing party's ability to obtain appellate review. (*Ibid.*)

Fortunately, we need not resolve these admittedly difficult questions regarding the appealability of postjudgment orders. In virtually all of these cases, an aggrieved party sought to immediately appeal a postjudgment order and the opposing party moved to dismiss the appeal on grounds that the possibility of future related proceedings in the trial court made the appeal premature.[7] Here, in contrast, Alexander contends the 2020 postjudgment discovery orders were *not* immediately appealable. Indeed, he made no attempt to timely appeal either of the earlier orders. He did not appeal the initial August 2020 order by Judge Trapp granting Scripps's motion to

_____

[7]    If future proceedings on the same topic are merely *possible* but not certain, the most prudent course is to file a notice of appeal accompanied by a writ petition asking the court to treat the appeal as a request for an extraordinary writ in the event the order is not appealable.

11

compel.[8] After his follow-up motion for a protective order did not yield the relief he sought, he did not appeal that decision by Judge Caietti in November 2020. And although his subsequent motion for reconsideration was not denied by Judge Katz until more than a year later, in February 2022, he did not seek review of that ruling. Instead, he waited until June 2023—after Judge Katz granted Scripps's motion for sanctions—to file a notice of appeal and claim that the order on sanctions somehow subsumed or incorporated all the prior postjudgment orders.

Alexander seems to assume that a party adversely affected by a postjudgment order can safely wait until the conclusion of *all* postjudgment proceedings, regardless of their nature, and then file an appeal challenging anything that has happened since the final judgment. But the only appealable order Alexander can point to, from which he timely sought to appeal, is the court's April 2023 sanctions order. And that is not a second final judgment that sweeps up every trial court order since 2016. As we have already explained, the sanctions order fairly incorporates the 2022 ruling on the motion for reconsideration, as the denial of reconsideration was a necessary (though not sufficient) predicate for awarding sanctions. To that extent, it can be challenged on this appeal as a "intermediate ruling[]" pursuant to section 906.

The same cannot be said for the two 2020 discovery orders. Neither the August order granting Scripps's motion to compel nor the November order denying in part Alexander's motion for a protective order "necessarily affects"

---

[8]    In addition to possibly appealing the earlier orders, Alexander could have sought writ review to the extent he questioned their appealability. In fact, he did seek writ review of Judge Trapp's August 2020 order, which we summarily denied. Even if he had not, to *now* seek writ review of discovery orders entered in 2020 would clearly be untimely. (See *Labor & Workforce Development Agency v. Superior Court* (2018) 19 Cal.App.5th 12, 24.)

the order on sanctions based on section 128.7. While those two orders preceded the sanctions order in time, the court's determination that sanctions were appropriate was in no way based on anything Alexander did in responding to the initial motion to compel or making his motion for a protective order. Accordingly, neither of the 2020 discovery orders are reviewable "intermediate rulings" within the meaning of section 906. Alexander's appeal is limited to challenging Judge Katz's April 21, 2023 order granting Scripps's motion for sanctions pursuant to section 128.7 in the amount of $5,472, and the incorporated intermediate ruling February 4, 2022 denying Alexander's motion for reconsideration.

**B.** ***The Trial Court Did Not Abuse Its Discretion in Awarding Sanctions***

Alexander contends the trial court lacked jurisdiction to consider Scripps's sanctions motion because he was improperly served. He also argues the court abused its discretion in ordering sanctions because his motion for reconsideration was not frivolous; sanctions were not needed to deter future conduct; and Scripps was not diligent in seeking relief.

1.  *Legal Principles and the Standard of Review*

Under section 128.7, an attorney who presents a pleading, motion, or similar paper to the court makes an implied "certif[ication]" as to its legal and factual merit, including that "it is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation" and that any "claims . . . [or] other legal contentions . . . are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." (§ 128.7, subd. (b)(1), (2).) A court may impose sanctions for violations of this certification requirement. (*Id.*, subd. (c); *Peake*

13

*v. Underwood* (2014) 227 Cal.App.4th 428, 440 (*Peake*).) Such a sanction must "be limited to what is sufficient to deter repetition of [the violation] or comparable conduct by others similarly situated." (§ 128.7, subd. (d); *Peake*, at p. 441.)

To obtain sanctions under this section, the moving party is required to show the opposing party pursued a claim that was legally or factually frivolous. In either case, the conduct in asserting the claim must be "objectively unreasonable." (*Peake*, *supra*, 227 Cal.App.4th at p. 440; *Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 189.) "A claim is objectively unreasonable if 'any reasonable attorney would agree that [it] is totally and completely without merit.' " (*Peake*, at p. 440; see *id.* at p. 448.)

Ordinarily "[w]e review a . . . section 128.7 sanctions award under the abuse of discretion standard." (*Peake*, *supra*, 227 Cal.App.4th at p. 441.) "The standard is deferential due to 'the importance of the trial court's close familiarity with the case in evaluating the potential sanctionee's litigation activity.' " (*Ponce v. Wells Fargo Bank* (2018) 21 Cal.App.5th 253, 261 (*Ponce*).) We apply this standard to a court's determination that no reasonable attorney would have found merit in a party's claim. (See *Peake*, at p. 444.) Doing so, "[w]e presume the trial court's order is correct and do not substitute our judgment for that of the trial court. [Citation.] To be entitled to relief on appeal, the court's action must be sufficiently grave to amount to a manifest miscarriage of justice." (*Ibid.*)

But " 'where a question of statutory construction is presented in the course of the review of a discretionary decision, such issues are legal matters subject to de novo review.' [Citation.] Similarly, '[t]he availability of sanctions under section 128.7 in connection with undisputed facts is a question of law subject to de novo review.' " (*Ponce*, *supra*, 21 Cal.App.5th at

14

p. 261; see also *Saurman v. Peter's Landing Property Owner, LLC* (2024) 103 Cal.App.5th 1148, 1160 ["there are varying degrees of deference within this standard of review"]; *Li v. Majestic Industry Hills LLC* (2009) 177 Cal.App.4th 585, 591.)

2.     *The Motion for Sanctions Was Properly Served*

Alexander initially contends the court was without jurisdiction to order section 128.7 sanctions because Scripps did not personally serve its notice and motion as it was required to do under section 1015. His sole cited authorities are section 1015 and *Cedars-Sinai Imaging Medical Group v. Superior Court* (2000) 83 Cal.App.4th 1281, which discusses contempt proceedings under section 1211 and their initiation by the filing of an affidavit and request for an order to show cause. (*Id*. at p. 1286.) On appeal, he refers to sanctions under section 128.7 as "contempt sanctions."

The premise of Alexander's argument is that a section 128.7 motion is akin to a contempt proceeding and must therefore follow procedural requirements applicable to such proceedings. He cites no authority for the proposition, and for that reason alone we may reject his contention on its premise. (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 418 [issues unsupported by citation to authority are waived].) We nevertheless observe that contempt has some role in noncompliant section 1008 applications for reconsideration. The Supreme Court discussed the background and purpose of section 1008 in *Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830. In doing so, the opinion commented that the Legislature made the statute expressly jurisdictional to support its goal of " ' "conserv[ing] judicial resources by constraining litigants who would endlessly bring the same motions over and over, or move for reconsideration of every adverse order and then appeal the denial of the motion to

15

reconsider." ' " (*Id.* at pp. 839–840.) It further explained that "[t]o deter parties from filing noncompliant renewed applications, the Legislature provided that '[a] violation of this section *may be punished as a contempt and with sanctions as allowed by Section 128.7.*' " (*Id.* at p. 840, italics added, quoting § 1008, subd. (d).)

We read the permissive and conjunctive italicized language as allowing for two options, and not as equating a request for section 128.7 sanctions in this context with a contempt proceeding or requiring parties to follow contempt procedures when serving and filing a section 128.7 sanctions motion. (See, e.g., *Woodbury v. Brown-Dempsey* (2003) 108 Cal.App.4th 421, 433 ["Ordinarily, the word 'may' connotes a discretionary or permissive act"].) Indeed, a section 128.7 motion has its own statutory service requirements. Subdivision (c)(1) provides that "[a] motion for sanctions under this section shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). *Notice of motion shall be served as provided in Section 1010 . . . .*" (*Ibid.*, italics added.)[9] Alexander does not address this express service requirement or the proper manner of service under section 1010. In light of this provision, we reject his contention that section 1015 applies and that Scripps's sanctions motion was noncompliant for Scripps's failure to personally serve him with the motion papers.

---

9    Section 128.7 has a mandatory 21-day safe-harbor requirement: the notice of a sanctions motion under that section "shall not be filed with or presented to the court unless, within 21 days after service of the motion, or any other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." (*Id.*, subd. (c)(1); *Li v. Majestic Industrial Hills LLC*, *supra*, 177 Cal.App.4th at p. 595.) Alexander does not claim Scripps violated this requirement.

16

Setting all that aside, we would reject Alexander's contention for his inability to demonstrate prejudice from any issue concerning service of the motion. The record reflects that Scripps filed its sanctions motion in October 2021 for a January 2022 hearing date, and in December 2021 Alexander filed his opposition to the motion on the merits. There is no indication Alexander sought a continuance, or somehow lacked notice given the method of service used by Scripps. He did not raise any such argument in his opposing papers or declaration. Alexander thus cannot meet his burden to establish prejudice. (*Reedy v. Bussell* (2007) 148 Cal.App.4th 1272, 1289 (*Reedy*); Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . in any cause . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"].)[10]

3.  *The Court Properly Determined that Alexander's Motion for Reconsideration Was Objectively Unreasonable*

Section 1008 governs applications for reconsideration of court orders. (§ 1008, subd. (a).) "Section 1008, subdivision (a) states the procedure for seeking reconsideration of a previous order. Section 1008, subdivision (b) sets out similar prerequisites for filing a renewed motion for an order that has previously been denied." (*Kerns v. CSE Ins. Group* (2003) 106

---

[10]  Alexander's appearance, failure to object to or mention any defective service, and opposition on the merits also constitutes a forfeiture of the argument on appeal. (See *Reedy*, *supra,* 148 Cal.App.4th at p. 1288 [" 'the appearance of a party at the hearing of a motion and his or her opposition to the motion on its merits is a waiver of any defects or irregularities in the notice of the motion. [Citations.] This rule applies even when no notice was given at all. [Citations.] Accordingly, a party who appears and contests a motion in the court below cannot object on appeal . . . that he had no notice of the motion or that the notice was insufficient or defective' "]; *Arambula v. Union Carbide Corp.* (2005) 128 Cal.App.4th 333, 342–343 [collecting cases].)

17

Cal.App.4th 368, 381.) "Subdivision (a) provides that 'any party affected' by a previous trial court order may, within 10 days after service of notice of entry of the order, make a motion for reconsideration thereof 'based upon new or different facts, circumstances, or law,' on condition of filing an affidavit stating 'what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown.' Similarly, subdivision (b) states that a party who has previously 'made an application for an order which was refused in whole or part, or granted conditionally or on terms, may make a subsequent application for the same order upon new or different facts, circumstances, or law,' provided a showing is made to the court 'by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown.' " (*Ibid.*) "Courts have construed section 1008 to require a party filing an application for reconsideration or a renewed application to show diligence with a satisfactory explanation for not having presented the new or different information earlier." (*Even Zohar*, *supra*, 61 Cal.4th at p. 839.) We review an order denying reconsideration for abuse of discretion. (*Torres v. Design Group Facility Solutions, Inc.* (2020) 45 Cal.App.5th 239, 243.)

Alexander challenges the order denying reconsideration, but he does not address the basis of the court's ruling: Because Alexander had earlier presented the August 2020 reporter's transcript to the court, that transcript and its contents were not "new or different facts [or] circumstances" so as to meet section 1008's requirements. The court explained it was "necessary that the party seeking reconsideration offer some fact or circumstance not previously considered by the court." In its view, however, Alexander "fail[ed]

18

to establish that the August 21, 2020[] transcript was not previously considered by the court" and thus "fail[ed] to meet his burden on this motion."

Alexander's appellate arguments skirt this critical issue. He merely contends his reconsideration motion was supported by Judge Trapp's remarks in the August 2020 transcript as well as the law and facts, and that he reasonably believed Judge Trapp and Scripps's counsel had agreed his financial information was privileged and private. He argues it was "objectively reasonable" for him to believe that Judge Caietti, in ruling on his motion for a protective order "was unaware of the information contained in the transcript." Without citing to the record, he asserts "Judge Caietti stated that Judge Trapp had not addressed the issue."

But an error by Judge Caietti, even it occurred, is not by itself a sufficient basis for a motion for reconsideration. Alexander simply does not address how a transcript he attached to his motion for a protective order—and thus already presented to the court—could be "new or different facts, circumstances and law." It is well settled that a moving party on a reconsideration motion based on "new or different" facts or circumstances must offer "a satisfactory explanation for the failure to produce that evidence at an earlier time." (*Blue Mountain Development Co. v. Carville* (1982) 132 Cal.App.3d 1005, 1013.) Necessarily implicit in this requirement is the principle that evidence *already provided* to the court does not constitute new or different facts or circumstances. This defeats his challenge to the court's reconsideration order.

4.    *Necessity for Sanctions and Scripps's Due Diligence*

Sanctions imposed under section 128.7 must be "limited to what is sufficient to deter repetition of this conduct or comparable conduct by others similarly situated." (§ 128.7, subd. (d).) Alexander cites this section and

19

points out that the court retains discretion to determine whether sanctions are warranted even on a finding that he violated section 128.7, subdivision (b)'s certification requirement. He argues the sanctions order here "was unnecessary to deter future conduct," reasoning that he "filed the reconsideration motion seeking a protective order that designates his financial records, including tax records, as privileged and private to prevent further disclosure" and that a "protective order of this type is consistent with [the trial court's] and Scripps's counsel's characterization, and existing California law." Alexander maintains that "[a]s a result, this issue is not going to repeat."

Alexander's opening appellate brief copies verbatim the reasoning articulated in his papers opposing the sanctions motion in the trial court. The trial court necessarily rejected the argument; we presume its order is correct and imply findings necessary to support it. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609; see, e.g., *Malinowski v. Martin* (2023) 93 Cal.App.5th 681, 690.) It is Alexander's burden to show error. (*Jameson*, at p. 609.) He must " ' "clearly establish[]" ' " how the court's implied finding of necessity was an abuse of discretion (*Malinowski*, at p. 690), not simply reiterate his arguments below for us to consider anew. Repeating the argument made in his trial court papers does not establish an abuse of discretion on appeal, thus we have no reason to disturb the sanctions order on this ground.

Section 128.7 also provides that "[i]n determining what sanctions, if any, should be ordered, the court shall consider whether a party seeking sanctions has exercised due diligence." (§ 128.7, subd. (c).) Alexander contends the trial court abused its discretion in ordering him to pay sanctions because "Scripps was not diligent in seeking relief." In his opening brief, Alexander again duplicates an argument he made in the trial court about the

20

scheduling of Scripps's motion, adding: "While Scripps blames Alexander for failing to submit a protective order to the trial court, the trial court ordered Scripps to do so without condition. . . . [¶] Scripps was not diligent in this case and should not have received a contempt sanctions award. It was Scripps that failed to provide a protective order with its discovery requests for financial records. It was Scripps that failed to meet and confer prior to Alexander's filing of the motion for a protective order. It was Scripps that still has not provided the trial court a protective order for signature."

Shifting blame to Scripps for purported delays in connection with the proposed protective order does not establish that Scripps failed to exercise diligence in making its section 128.7 sanctions motion. As Scripps points out, the court in awarding sanctions specifically rejected Alexander's claim that Scripps failed to exercise due diligence.[11] Alexander does not address the court's findings; he does not discuss whether they are supported by substantial evidence or whether they are based on an error of law as applied

[11] Referencing the register of actions in support of its findings, the court ruled: "Alexander raises the preliminary argument that Scripps failed to exercise due diligence in bringing this motion. A review of the court file shows that Alexander filed his motion for reconsideration on December 4, 2020 . . . ; Alexander's motion for reconsideration was originally scheduled for hearing on January 22, 2021 . . . ; Alexander's motion for reconsideration was vacated on December 8, 2020[,] . . . following entry of an order granting Alexander's peremptory challenge of the Honorable Carolyn M. Caietti . . . ; this matter was thereafter assigned to this department on October 6, 2021 . . . ; Scripps filed its motion for sanctions on October 15, 2021 . . . ; Alexander's motion for reconsideration was re-set for hearing at a January 1, 2022[] ex parte hearing . . . ; Alexander's motion for reconsideration was heard and denied on February 4, 2022 . . . . Thus, court records show that Alexander's peremptory challenge was granted [four] days after Alexander filed his motion for reconsideration and that Scripps filed its motion for sanctions [nine] days after this matter was reassigned to this department. The court finds such circumstances do not warrant a finding of lack of due diligence by Scripps."

21

to the facts. He does not address them in his reply brief. Because Alexander fails to rebut the presumption of correctness, we leave the court's ruling undisturbed.

## C. *Scripps's Motion for Sanctions on Appeal*

Scripps moves for sanctions against Alexander equal to its attorney fees and costs incurred in responding to his appeal and bringing the motion. In arguing that his appeal is substantively frivolous, it points not just to Alexander's appellate arguments, but also to his conduct in connection with his first appeal and his discovery objections following remand. It highlights his deficient appellate briefing, failure to provide an adequate record, and failure to cite all material evidence, including evidence harmful to him. Scripps further asserts that Alexander's appeal—on which he received briefing extensions—was taken solely to delay its collection efforts on the still-unpaid judgment.

This court has authority to "impose sanctions . . . on a party or an attorney" for "[t]aking a frivolous appeal or appealing solely to cause delay." (Cal. Rules of Court, rule 8.276(a)(1); see also § 907 ["When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just"].) But "an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) "An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions. . . . [T]he punishment should be used most sparingly to deter

only the most egregious conduct," being careful to "avoid a serious chilling effect on the assertion of litigants' rights on appeal." (*Id*. at pp. 650–651.)

Here, although Alexander's conduct may not have been admirable, particularly for an attorney, it does not fall into the category of " 'the most egregious conduct.' " We decline to impose sanctions against him for filing a frivolous appeal. (See *Bacall v. Shumway* (2021) 61 Cal.App.5th 950, 964.)

## DISPOSITION

The postjudgment order awarding sanctions is affirmed. Scripps shall recover their costs on appeal.

DATO, J.

I CONCUR:


RUBIN, J.


I CONCUR IN THE RESULT:


O'ROURKE, Acting P. J.

23